## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| EMMETT BRYANT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| AFLAC INCORPORATED; | ) |
| THE TJX COMPANIES, INC. | ) |
| WELFARE BENEFITS PLAN; | ) |
| THE TJX COMPANIES, INC.; | ) |
| TJX DIGITAL, INC.; and ZURICH | ) |
| AMERICAN LIFE INSURANCE | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

## **COMPLAINT**

Plaintiff Emmett Bryant brings this action for violations of the Employee Retirement Income Security Act of 1974 ("ERISA") committed by the above-named Defendants.

1. This suit is brought pursuant to 29 U.S.C. § 1132 in order to secure benefits due to Plaintiff through The TJX Companies, Inc. Welfare Benefits Plan, (the "Plan").

2. Plaintiff seeks past due and future long term disability benefits, waiver of premium benefits under the disability, life, and accidental death and dismemberment policies issued by or administered by Defendants, as well as any

other direct or ancillary benefits (such as continued coverage and waiver of premiums) available through the Plan that are contingent upon a finding of disability.

3. Plaintiff seeks payment of unpaid interest on Defendant's delayed LTD benefit payments under the Plan.

4. Plaintiff seeks prejudgment interest.

5. Plaintiff seeks benefits based on the several conditions documented in his medical records and claims documents, including among other things:

> chronic low back and bilateral leg pain, sciatica, osteoporosis, arthrodesis at L4-5, degenerative disc disease, severe spinal stenosis, spondylolisthesis, broken right L4 screw through superior endplate into the L3-4 interspace, septic infection in left knee, decreased range of motion, edema, impaired gait and mobility, obesity, hypertension, tremors, and extreme pain

6. These conditions and the large amount of medications they required resulted in chronic restrictions and limitations which Plaintiff's physicians have assessed as being permanent and total in nature.

7. Suit is also brought to enforce the statutory obligation of the above-named Defendants to produce all instruments and documents pertaining to administration of his ERISA employee welfare benefits required under 29 C.F.R. § 2560.503-1.

## JURISDICTION

8. Jurisdiction is appropriate under 28 U.S.C. § 1331 in that 29 U.S.C.

§1132 confers jurisdiction upon the district courts of the United States where, as here, Plaintiff's claims relate to an "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined within 29 U.S.C. § 1001, <u>et. seq</u>.

## VENUE

9. Venue is appropriate in that a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this district. Venue is also proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. § 1391 because Defendants maintain business activity in and are in this district.

## PARTIES

10. Plaintiff Emmett Bryant is a resident of the State of Alabama.

11. Defendant Aflac Incorporated ("Aflac") is, upon information and belief, a Georgia corporation with its principal place of business in the State of Georgia.

12. Defendant Aflac is a plan "fiduciary" under the employee welfare benefit plan.

13. Defendant Aflac is an insurance company authorized to transact the business of insurance in the State of Alabama and further served as underwriter for the employee welfare benefit plan.

14. Defendant Aflac may be served with process by serving Corporation Service Company, 641 South Lawrence Street, Montgomery, AL 36104.

15. Defendant Aflac exercised authority or control respecting the management or disposition of the plan assets, and is, therefore, a "fiduciary" as that term is defined by 29 U.S.C. § 1002(21).

16. Defendant Aflac provides services to the disability plan at issue and, as such, is a "party in interest" as that term is defined by 29 U.S.C. § 1002(14).

17. Defendant The TJX Companies, Inc. is the employer that maintained the benefit plan at issue and may be served with process by serving CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

18. Defendant TJX Digital, Inc. is the employer that maintained the benefit plan at issue and may be served with process by serving CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104.

19. The TJX Companies, Inc. Welfare Benefits Plan, (the "Plan") is an "employee welfare benefit plan" as defined within 29 U.S.C. §1001, et. seq., and may be served either with process by serving either: 1) CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL 36104; or 2) Director, Human Resources, c/o The TJX Companies, Inc., 770 Cochituate Road, Framingham, MA 01701, or wherever it may be found.

20. Defendant Zurich American Life Insurance Company is, upon information and belief, an Illinois Corporation whose principal place of business is in Schaumburg, Illinois.

21. Defendant Zurich American Life Insurance Company may be served with process by serving Corporation Service Company, 641 South Lawrence Street, Montgomery, AL 36104.

## THE PLAN

22. Disability benefits under the Plan were provided via insurance policies sold by Zurich American Life Insurance Company ("Zurich"), the company which also underwrote the policies. As such, the disability benefits are insured by Zurich.

23. The policies, also sometimes referred to as the "Plan," were provided for the purpose of conferring a benefit upon Plaintiff and other employees. They qualify as an employee welfare benefit plan as defined in 29 U.S.C. § 1002(1).

24. Plaintiff qualifies as a participant and a beneficiary under the Plan as that term is used in 29 U.S.C. § 1132.

25. Under the terms of the Plan providing for disability benefits, Plaintiff is "disabled" as defined by the Plan.

## CLAIM HISTORY

26. Until his disability in September 2018, Plaintiff was a Distribution

Center Supervisor Store Manager at TJX Digital, Inc.

27. Prior to that, Plaintiff served in the United States Army for eight (8) years and was a Warehouse Operations Manager at Coleman Logistics.

28. Plaintiff has a past medical history of five (5) knee surgeries, multiple back surgeries, malfunctioning hardware in his back, and osteoporosis.

29. Zurich agreed that his numerous conditions and the effects of the copious amount of medicine rendered him unable to perform the demands of his occupation, paying him benefits until December 29, 2020.

30. Despite his relatively young age, Plaintiff was awarded Social Security benefits on September 24, 2020.

31. The Social Security Administration applied a much stricter definition of disability than the one used under the policy at issue here.

32. In awarding benefits, the Social Security Administration determined that Plaintiff met a listing, which means that he met all the criteria for a situation where any individual would be disabled regardless of age, education, or work experience.

33. Zurich denied benefits by determining Plaintiff was no longer disabled as of December 30, 2020.

34. Zurich denied benefits on August 26, 2020, predicting what Plaintiff's condition would be *four months* in the future.

35. That denial was also based entirely upon an attending physician statement dated November 15, 2019, wherein Plaintiff's orthopedic surgeon, Dr, Hodges, opined Plaintiff would likely be able to perform sedentary work because he had reached maximum medical improvement and there were no apparent acute issues.

36. Plaintiff's visits with his surgeon following November 2019 reflect that he was having to ambulate with a cane, suffering from back pain, and had a decreased range of motion.

37. By October 2020, Plaintiff's condition had greatly declined and he was experiencing significant back and leg pain.

38. Upon examination and imaging, it was discovered Plaintiff had serious osteoporosis, which was very unusual for his demographics and age.

39. His osteoporosis caused the hardware from his prior surgery to malfunction and move, and his screws were exacerbating his pain.

40. Plaintiff's neurosurgeon concluded that additional surgery would be required due to the malfunctioning hardware and additional spinal degeneration at L3-4. However, he felt surgery should not take place until Plaintiff's bones were strengthened via treatment for his osteoporosis.

41. In a November 2020 visit, Plaintiff's orthopedic surgeon took more imaging, which confirmed that one of the screws in his spine had broken through

into the central cavity where his spinal cord was located, that his graft had shifted, and that there had been severe degeneration and retrolisthesis since his surgery. The doctor's notes indicate he believed surgery was required and that a number of additional tests were necessary to determine the cause of and extent of Plaintiff's numerous problems.

42. On November 12, 2020, Plaintiff contacted Defendants to discuss their preemptive denial of his benefits as of December 30, 2020. Specifically, Plaintiff asked if there were any forms that could be completed by his doctors (such as another attending physician's statement), and Defendants told him "no." Plaintiff also explained that his pain had gotten worse.

43. Plaintiff appealed that denial on January 15, 2021 in accordance with Defendants' instructions. He explained that his pain had continued to get worse, particularly after one of the screws in his spine had shattered bone and was coming in contact with his spinal nerve.

44. Defendants' review process primarily consisted of paying a physician, Dr. Mahr, to conduct a pure paper review of Plaintiff's records. That reviewer was not provided with any of Plaintiff's imaging post-2018.

45. On February 25, 2021, Defendants' paper reviewer concluded Plaintiff was capable of performing sedentary work by mirroring the restrictions and limitations set out in Dr. Hodges November 2019 attending physician

statement, which was provided at a time when Plaintiff's condition was far different.

46. However, Dr. Mahr qualified his opinion by noting that it would only apply up until the point Plaintiff obtained the surgery Dr. Hodges had recently determined was necessary. In other words, Dr. Mahr implicitly acknowledged that Plaintiff would *at least* be disabled for some amount of time after his surgery. He also determined that follow-up would be necessary by Defendants by May 25, 2021 to assess Plaintiff's condition.

47. Neither Dr. Mahr nor any other person working for Defendants attempted to ask Dr. Hodges if his November 2019 assessment (over a year prior) would have changed in any way due to the intervening hardware malfunction, diagnosis with severe degenerative changes, osteoporosis diagnosis, intrusion into the spinal canal by a screw, destruction of bone, and determination that additional spinal surgery was required.

48. Dr. Mahr and Defendants also ignored the impact of Plaintiff's knee problems, which had required five (5) different knee surgeries. Plaintiff had been advised his only remaining option would be total knee replacement, but his previous complications made his knee surgeon wary of further surgery.

49. Despite the fact that Plaintiff was on a number of very potent medications and narcotics, Dr. Mahr and Defendants also assumed that Plaintiff

suffered no side effects whatsoever.

50. Defendants ignored these side effects even after Plaintiff explicitly explained that his medication caused muscle weakness and tremors to the point that he had difficulty holding a cell phone.

51. Plaintiff also asked how Defendants' paper review could possibly determine his restrictions and limitations without ever examining him in person, reviewing his imaging, talking to his physicians, or even talking with Plaintiff, but Defendants failed to provide any reasonable explanation.

52. Defendants refused to obtain an in-person examination to more properly assess Plaintiff's condition, instead choosing to deny benefits based upon a conclusion that Plaintiff was somehow lying or exaggerating his condition (which was verified by objective imaging).

53. In making this credibility assessment, Defendants ignored Plaintiff's long history of excellence and hard work and failed to identify *anything* he had said or done that was inconsistent or evidence of malingering. In other words, Defendants' credibility assessment was utterly baseless and unreasonable.

54. Defendants denied Plaintiff's appeal on March 22, 2021.

55. Defendants violated a large number of ERISA's claims procedures and the Department of Labor's regulations concerning basic procedural fairness

and Defendants' obligations to act as a fiduciary acting solely in Plaintiff's best interests and conduct a non-adversarial review of his claim.

56.     Defendants' failure to provide a full and fair review results in the relevant standard of review being *de novo*.

57.     Defendants use a number of tools to make claims decisions primarily on factors such as the amount of benefits that will have to be paid and the statistical likelihood it can save money by denying a claim. These things have nothing to do with whether a particular claimant is disabled or the promises made in the relevant policy.

58.     The manner in which Plaintiff's claim was handled makes it clear it was driven by financial factors. It was not the non-adversarial review conducted by a disinterested fiduciary acting solely in Plaintiff's best interests required by ERISA.

59.     In administering the disability claim, Defendants have committed numerous breaches and errors including the following:

    (a)     Targeting Plaintiff's claim for denial because his claim was governed by ERISA;

    (b)     Failing to take any meaningful measures to insulate the claims personnel who handled Plaintiff's claim from Defendants' inherent conflict under the Supreme Court case *Glenn v. MetLife*

11

and instead allowing its profit motive to influence these persons to engineer the termination and closure of Plaintiff's claim;

(c) Withholding numerous relevant documents and information from Plaintiff during the claims process;

(d) Depriving Plaintiff of the ability to obtain a full and fair review of his claim;

(e) Taking an adversarial posture against Plaintiff instead of a fiduciary posture by openly searching for ways to avoid paying part or all of his claim;

(f) Failing to accord any weight at all to Plaintiff's medical providers and instead relying on error-prone and inattentive "paper reviewers" to determine the medical cause of Plaintiff's overall disability;

(g) Purposefully limiting and curtailing the review of medical consultants and otherwise improperly exerting influence on them to opine against payment of benefits;

(h) Purposefully and persistently misleading Plaintiff into believing that he did not need to submit any additional medical documentation in support of the claim and otherwise refusing to tell Plaintiff what he needed to provide before his claim could

be perfected and paid;

(i) Unreasonably and arbitrarily overruling all of the professionals who personally examined Plaintiff or allowing any of them the opportunity to "peer review" Defendants' reviewers after Plaintiff completed his appeal (essentially conducting a one-way medical review process);

(j) Failing to give Plaintiff's claim a full co-morbid review and give any consideration to how his conditions and medications impacted one another; and

(k) Conducting a new review on appeal creating new "evidence" and an entirely new decision to which Plaintiff had no opportunity to respond administratively.

60. Despite Plaintiff's established disability under the terms of his Plan, taking into account his condition as a whole, and his physicians' submission of medical records supporting those restrictions, the Zurich claims team determined that Plaintiff was capable of working.

61. Defendants failed to provide Plaintiff with a meaningful opportunity for a full and fair review of his claims for benefits as required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1. Among other things, they subjected him to a secret second determination when they refused to provide new information upon which

they relied in considering Plaintiff's appeal.

62. Defendants refused to provide Plaintiff with relevant documentation concerning his Plan and his claim generally which controlled how his claim was administered.

63. Defendants' decision process in this matter did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with Department of Labor Regulations.

64. Plaintiff has exhausted all Plan remedies. As such, this case is ripe for determination.

## COUNT I

### RELIEF UNDER 29 U.S.C. § 1132(a)

65. Plaintiff adopts and incorporates all of the paragraphs above as though fully set forth herein.

66. The Plan is deemed "employee welfare benefit plan" and/or "employee pension plan" as those terms are defined in 29 U.S.C. § 1001, et. seq.

67. Plaintiff is a "participant" and a "beneficiary" in the employee welfare benefit and/or pension plan as those terms are defined under 29 U.S.C. § 1001, et. seq.

68. Plaintiff is disabled under the terms of the employee welfare benefit

plan as to long term disability benefits and life waiver of premium benefits.

69. Defendants' termination of the Plaintiff's benefits was not and is not supported by substantial evidence.

70. Defendants denied Plaintiff's benefits to which he was entitled under the terms of the employee welfare benefit plan/insurance policy or policies by refusing to provide or discontinuing payment of benefits.

71. The decision-making process did not comport with 29 U.S.C. § 1133's requirement that any notice of the denial must contain the specific reasons for such denial, written in a manner calculated to be understood by the participant, and must comport with the Department of Labor Regulations.

72. The decision-making process did not provide a reasonable opportunity to Plaintiff for a full and fair review of the decision denying the claim, as is required by 29 U.S.C. § 1133 and 29 C.F.R. 2560.503-1.

73. The appellate procedures did not provide Plaintiff with a full and fair review.

74. Defendants' actions were wrong, unreasonable, and arbitrary and capricious and in violation of the terms of the employee welfare benefit plan/insurance policy.

75. Defendant's claims process and claims decisions were tainted by conflict of interest which motivated claims personnel to deny Plaintiff's claim.

76. As a direct and proximate result of the conduct of Defendants in failing to provide benefits for Plaintiff's disability and/or terminating benefits, and in failing to provide a full and fair review of the decision to deny benefits and/or terminate benefits, Plaintiff has been damaged in the amount equal to an amount of benefits to which Plaintiff would have been entitled under the Plan, in an amount equal to future benefits payable while Plaintiff remains disabled under the terms of the Plan, to the cost of coverage and amount of any additional coverages (such as Life and AD&D coverage) afforded under the plan in the event of a disability finding.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Emmett Bryant respectfully requests this court find jurisdiction and venue appropriate, and after trial, grant him the following relief:

a. Award Plaintiff past benefits due and payable under the terms of the employee welfare benefit plan/insurance policy(ies) and/or pension plan pursuant to 29 U.S.C. § 1132(a)(1);

b. Enter a declaratory judgment as to Plaintiff's entitlement to future benefits and an appropriate order directing the Defendants to pay all similar claims of Plaintiff in the future pursuant to 29 U.S.C. § 1132(a)(1);

c. If Defendants voluntarily pay all past due benefits, enter a declaratory

       judgment as to Plaintiff's entitlement to future benefits, along with entering an appropriate order directing Defendants to pay similar claims to Plaintiff in the future, or in the alternative, for the Court to remove Defendants from their fiduciary roles in the administration of the Plan, and to appoint a special master to substitute for this Defendant with the special master having the authority to make all determinations as to Plaintiff's entitlement to future benefits;

d.    For a judgment against the Defendants awarding Plaintiff prejudgment interest, costs and expenses, including the reasonable attorneys' fee as permitted under 29 U.S.C. § 1132(g)(1);

e.    For an order enjoining Defendants from further breaches of fiduciary or co-fiduciary duties, and direct that Defendants exercise reasonable care, skill, prudence, and diligence in the administration of Plaintiff's claim;

f.    For an order finding Defendants jointly and severally liable for the breaches described herein;

g.    For an order requiring Defendants to provide Plaintiff with any additional benefits to which the Plaintiff would be entitled pursuant to a finding that the Plaintiff is disabled under the Plan(s) and/or "programs" and specifically that the Plaintiff is entitled to waiver of

   premium benefits and continued coverage for all benefits he is entitled to under the terms of the Plan if disability benefits are awarded; and

h. Such other relief as may be deemed just and proper.

       Respectfully Submitted,

       <u>/s/  *Lee P. Fernon, Jr.*</u>
       Thomas O. Sinclair
       Lee P. Fernon, Jr.
       Sinclair Law Firm, LLC
       2000 SouthBridge Parkway
       Suite 601
       Birmingham, AL 35209
       T: 205.868.0818
       F: 205.868.0894
       E: tsinclair@sinclairlawfirm.com
       E: lfernon@sinclairlawfirm.com

       **ATTORNEYS FOR PLAINTIFF**